916

William I. RILEY *v.* STATE of Arkansas

CA CR 79-35                                          593 S.W. 2d 45

Opinion delivered December 12, 1979
Released for publication January 23, 1980

*Paul Petty* and *John Patterson*, for appellant.

*Steve Clark*, Atty. Gen., by: *Dennis R. Molock*, Asst. Atty. Gen., for appellee.

DAVID NEWBERN, Judge. In his first and third points for reversal of his conviction of theft by receiving, the appellant complains of an unlawful search and insufficiency of evidence to show he knew the lawnmower he received was stolen. We hold the appellant gave valid consent to the search and the evidence of his knowledge was sufficient. In his second point, however, the appellant contends the evidence was not sufficient to show the value of the lawnmower to be over $100, and thus the charge should have been reduced from class C felony to class A misdemeanor. We agree and modify the sentence accordingly.

## I.

Edgar Sharp testified he and the appellant had a conversation in the presence of customers at Smith's Grocery, where Sharp was employed, in which they discussed the appellant's desire to buy a riding lawnmower. The appellant told Sharp he wanted one and would pay $300 for a good one. No testimony showed the appellant asked Sharp to steal a mower or that Sharp said that was the manner in which he proposed to obtain one for the appellant. Sharp said he had a couple of boys who were ''in the business'' and thus could supply the mower. He further testified he asked David Jansen to steal a mower belonging to Mrs. Spoon and deliver it to the appellant's home place which he pointed out to Jansen.

Jansen's testimony confirmed that he was procured by Sharp to steal Mrs. Spoon's mower. He, in turn, invited his friend, Steve Shelton, to help. Sharp paid Jansen $100, and Jansen paid Shelton $50. Jansen testified that after he and Shelton took the mower from Mrs. Spoon's yard, they delivered it to the appellant's place, unloaded it beside the

appellant's barn and covered it with hay. Jansen testified the appellant's mobile home was situated about 50 yards from the barn. It was after dark when the delivery was made, but there was a light at the mobile home, and someone came out of it while they were unloading the mower. The apparent intention of the appellee in eliciting this testimony was to show the occupant of the mobile home knew the delivery was taking place.

Shelton also testified, confirming Jansen's story about the delivery and adding that there was a gate on the appellant's property through which they had to pass and that the gate was "down." Another witness said the appellant's gate was usually closed because he kept livestock inside the fence.

Our conclusion is that this evidence was sufficient to show the appellant knew the mower, of which he was later found in possession, was stolen property. We agree with the appellee's conclusion that the fact the lawnmower was covered with hay upon delivery would be sufficient to show the appellant knew he was not involved in a regular business transaction. This evidence was at least sufficient to make a jury question.

Mrs. Spoon reported her mower stolen on September 21, 1978. On October 11, 1978, Mrs. Spoon's mower was found at the appellant's property. Possession of recently stolen property, if not satisfactorily explained to the jury, is sufficient to sustain a conviction. *Patterson* v. *State*, 253 Ark. 393, 486 S.W. 2d 19 (1972). See also, *Paschal* v. *State*, 243 Ark. 329, 420 S.W. 2d 73 (1967). Although the appellant presented an explanation that he had purchased the mower from someone whose name he did not know, the jury apparently found the explanation unsatisfactory. It was the jury's responsibility, of course, to evaluate the credibility of the witnesses. *Smith* v. *State*, 258 Ark. 601, 528 S.W. 2d 389 (1975).

## II.

The search of which the appellant complains occurred when a state police investigator and a deputy sheriff went to

the appellant's home. They had information from Jansen and Shelton that the mower had been left at a place meeting the description of the appellant's. The deputy said he recognized their description as being of the appellant's property. Upon their arrival, according to the investigator's testimony, they informed the appellant they were there "checking on a lawnmower," and the appellant explained how he had recently purchased a mower. He told them two conflicting stories, however, as to where he had purchased it. When he was asked if the investigator and the deputy could look at the mower, he readily assented and took them outside to see it. The appellant was not arrested at that time although the serial numbers on the mower were found to be the same as those on Mrs. Spoon's missing machine. No warnings were given to the appellant at any time during this visit, nor was he advised of his right to withhold his consent to the "search." The state police investigator testified he did not suspect the appellant at that time. The deputy, who admittedly knew less of the details of the case at that time, said at one point in his testimony that he suspected the appellant of a crime when he went to the appellant's place.

The appellant cites a number of cases dealing with the traditionally produced evidence of involuntariness of consent, *i.e.*, coercion by threat or promise. They need not be dealt with here, however, as there is no serious contention the consent was coerced. The contention, rather, is that the lack of a showing by the appellee that the appellant knew of his right to refuse to permit the warrantless search makes his consent other than "knowing and voluntary."

The appellant acknowledges that knowledge of the right to refuse has been held to be only one factor in determining voluntariness as required by the fourth and fourteenth amendments to the U.S. Constitution. *Watson* v. *U.S.*, 423 U.S. 411, 96 S. Ct. 820 (1976); *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041 (1973). Those cases also hold proof by the prosecution of knowledge of the right to consent is not necessary to a showing of voluntary consent sufficient to satisfy the U.S. Constitutional requirements.

There certainly was no evidence here of any kind of oppression or promise which would cause us to hold the

consent to have been involuntary when combined with the lack of proof of knowledge. The appellant seems to admit there was no violation in the "traditional" sense of his rights under the fourth and fourteenth amendments, but on the other hand he seems to argue that there was some requirement he be advised of his right to refuse consent just as he could have asserted a right to be advised of his right to remain silent if he had been a suspect. Any such contention that the U.S. Constitution imposes that requirement, is laid soundly, logically and emphatically to rest in the *Schneckloth Case, supra*, in which the U.S. Supreme Court made it clear that the warning rights associated with confessions and trial safeguards may not be transferred to the context of consensual search.

The *Schneckloth Case* has been cited by the Arkansas Supreme Court on several occasions. In *Enzor* v. *State*, 262 Ark. 545, 559 S.W. 2d 148 (1978), Judge (then Justice) Howard cited it to show there was no requirement of a showing of knowledge of the right to refuse consent to search where there was a showing of consent. Earlier, in a dissenting opinion, Justice Byrd had mentioned that it held a "Miranda warning" was not required in such a case. *Byars* v. *State*, 259 Ark. 158 at p. 183, 533 S.W. 2d 175 at p. 188 (1976). Although the *Enzor Case* might be deemed sufficient to cover the matter, the Arkansas Supreme Court has not had occasion to decide whether it will go beyond the requirements of the fourth and fourteenth amendments and say some other rule or sense of fair play requires a person whose property is to be searched be told he need not consent. We are persuaded there should be no such requirement. In the *Schneckloth Case*, Mr. Justice Stewart's opinion, in addressing the suggestion that advice of the right to refuse be regarded as a prerequisite to consensual search, said the following:

> That, however, is a suggestion that has been almost universally repudiated by both federal and state courts, and, we think rightly so. For it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning. Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally

occur on the highway, or in a person's home or office, and under informal and unstructured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime. These situations are a far cry from the structured atmosphere of a trial, where, assisted by counsel if he chooses, a defendant is informed of his trial rights. And, while surely a closer question, these situations are still immeasurably far removed from "custodial interrogation" where, in *Miranda* v. *Arizona*, we found that the Constitution required certain now familiar warnings as a prerequisite to police interrogation. [412 U.S. at 231-232, citations and footnotes omitted]

As we find this language and general approach highly persuasive, we approve the conduct of the officers in this case and find no violation of any constitutional right or fairness ethic resulted from the lack of advice as to the right to refuse to consent to the search.

## III.

The appellant was convicted of a class C felony for violation of Ark. Stat. Ann., § 41-2206 (Repl. 1977). To prove a class C felony the state must show the value of the property to be in excess of $100. If the property is shown to have some value but less than $100, theft by receiving it becomes a class A misdemeanor.

The proof of value here included (1) Mrs. Spoon's testimony the lawnmower was inoperable and she considered selling it for $50 or $75; (2) Sharp's testimony that the appellant was to pay $300 for the mower; (3) a ledger sheet showing the mower was purchased for $537.90 some four years before it was stolen; and (4) testimony of a mower repairman that the mower could be worth more or less than $100, depending on its condition.

The burden was on the appellee to show the value of the mower to be in excess of $100. *Lee* v. *State*, 264 Ark. 384,

571 S.W. 2d 603 (1978); *Rogers* v. *State*, 248 Ark. 696, 453 S.W. 2d 393 (1970). Viewing the evidence most favorably to the appellee, we find it not sufficient to form a basis of a factual determination that the mower was worth more than $100. The 1974 price was too remote. *Cf., Cannon* v. *State*, 265 Ark. 270, 578 S.W. 2d 20 (1979), and *Williams* v. *State*, 252 Ark. 1289, 482 S.W. 2d 810 (1972). The price agreed to by the appellant for a mower he had neither seen nor even had described to him is not relevant to establishment of a market price, or cost of replacement. Ark. Stat. Ann., § 41-2201 (11) (a) and (b) (Repl. 1977). The testimony of the repairman became virtually worthless when, having testified on direct examination the mower was worth $100, he answered ''possibly'' to a question on cross examination whether the mower might be worth more or less than that amount.

The evidence supported conviction for theft by receiving of property of some value but less than $100. The error in overruling the appellant's motion at the end of the state's evidence to reduce the charge to a class A misdemeanor will be cured by reducing the sentence from confinement in the state penitentiary for three years to confinement of one year in a place to be determined by the circuit court and reduction of the fine from $3000 to $1000. *Cannon* v. *State, supra*.

Affirmed as modified, and remanded for determination of the place of confinement.