Charles "Tubby" WILSON *v.* STATE of Arkansas

CA CR 83-70 662 S.W.2d 204

Court of Appeals of Arkansas
Division II
Opinion delivered December 21, 1983
[Rehearing denied January 18, 1984.]

178

*Felver A. Rowell, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. In investigating a number of thefts, deputies of the Pope County Sheriff's Office were told that the thieves had traded much of the stolen merchandise to the appellant for marijuana. The officers obtained a search warrant based on the affidavit of one of the admitted thieves, searched appellant's home, and found numerous items that were listed in the warrant. During the search they noticed other items they remembered had been reported as stolen. They then obtained another warrant and seized these additional items. Appellant was arrested on February 9, 1981, and on October 26, 1982, was convicted of theft by receiving.

On appeal it is argued that the first search warrant was illegally obtained because the affidavit was not sworn to under oath. The affidavit states on its face that it was subscribed and sworn to before Municipal Judge Richard Peel, and the judge testified that he questioned the witness, Terry Pratt, about the content of the affidavit, asked if the statements therein were true, and had Pratt sign in his presence. He admitted, however, that he probably did not require the witness to raise his right hand and state orally that the statements in the affidavit were "the truth, the whole truth, and nothing but the truth, so help me God." We do not think this was necessary.

In *Cox v. State*, 164 Ark. 126, 261 S.W. 303 (1924), the appellant was convicted of making a false affidavit. The trial court had refused to instruct the jury in regard to the manner of administering oaths as set out in what is now Ark. Stat. Ann. §§ 40-101 & 102 (Repl. 1962). Those sections provide that one may swear by uplifted hand or by laying a hand on and kissing the Gospels, but the court held that these were not the only methods by which oaths could be administered. The court said:

> So here we think if appellant signed the affidavit for the purpose of swearing to it, knowing that the clerk regarded his act of signing the affidavit as a method of making affirmation, the jury was warranted in finding that appellant was sworn. *Fortenheim* v. *Claflin, Allen & Co.*, 47 Ark. 53.

*Cox* v. *State* was quoted with approval in *A and B* v. *C and D,* 239 Ark. 406, 390 S.W.2d 116 (1965). In addition, Ark. Stat. Ann. § 41-2601 (3) (Repl. 1977), reads as follows:

> "Oath" means swearing, affirming and every other mode authorized by law of attesting to the truth of that which is stated. Written statements shall be treated as if made under oath if:
>
> . . . .
>
> (b) the statement recites that it was made under oath, and the declarant was aware of such recitation at the time he signed the statement and intended that the statement should be considered a sworn statement; . . . .

Pratt admitted he signed the affidavit in the presence of the municipal judge, and the affidavit states "I, Terry Pratt, being duly sworn on oath, do solemnly swear . . . " Although it is the state's burden to establish that the warrant was issued in compliance with the law, *Lunsford* v. *State,* 262 Ark. 1, 552 S.W.2d 646 (1977), when we review the trial court's ruling we make an independent determination based upon a totality of the circumstances, and do not reverse the trial court's finding unless it is clearly against the preponderance of the evidence. *Grant* v. *State,* 267 Ark. 50, 57, 589 S.W.2d 11 (1979). While a more formal procedure of administering the oath might be more appropriate, considering the evidence and law set out above, we find no reversible error in the trial court's ruling as far as the making of the affidavit under oath is concerned.

Likewise, we find no reversible error, individually or collectively, in the other attacks made upon the search warrant. We do not agree that the affidavit merely stated conclusions; and in view of the fact that the warrant described appellant's house as the Charles "Tubby" Wilson residence, *Gatlin* v. *State,* 262 Ark. 485, 559 S.W.2d 12 (1977), and the more particularized description in the affidavit, *Baxter* v. *State,* 262 Ark. 303, 311, 556 S.W.2d 428 (1977), we do not agree that the description of the premises to be searched was inadequate.

Appellant says there was no finding of probable cause to issue the warrant, but the warrant states on its face that the magistrate found probable cause. Moreover, it has been held that the magistrate's actual issuance of the search warrant established his finding of probable cause even more positively than the insertion of a conclusory finding to that effect would have, *Harris* v. *State*, 262 Ark. 506, 558 S.W.2d 143 (1977).

It is also argued that we should invalidate the warrant because there was no return on the face of it. The return, however, was attached to the warrant and we know no rule or reason that would prevent the return being made on a separate, attached document. Appellant also says the officer did not swear to the contents of the return, but his signature appears under the statement, "I swear that this inventory is a true and detailed account of all the property taken by me" and it is signed by the municipal judge under the line that states, "Subscribed and sworn to before me . . . . " Again, there was no formal oath-taking and the return probably was not signed in the judge's presence, but substantial compliance with the requirement of A.R.Cr.P. Rule 13.4 (b) that a "verified" return be made was all that was necessary, *Shackleford* v. *State*, 261 Ark. 721, 551 S.W.2d 205 (1977), and we cannot say that the trial court erred in holding against appellant on this point.

Appellant next says the testimony of Pratt differed at the suppression hearing from what was in his affidavit. In *Franks* v. *Delaware*, 438 U.S. 154 (1978), the United States Supreme Court said:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence,

and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The holding in *Franks* v. *Delaware* was applied by the Arkansas Supreme Court in *Brown* v. *State,* 264 Ark. 248, 570 S.W.2d 251 (1978). In the instant case, Pratt's testimony at the suppression hearing was certainly ambiguous and contradictory. In his affidavit he said the property described was stolen by him and personally delivered to the appellant's home and was still there the last time he was there. At the suppression hearing, he agreed with both prosecuting attorney and defense counsel and vacillated between confirming and rejecting the facts set out in his affidavit. We must defer to the superior position of the trial court to pass upon the credibility of witnesses, *Grant* v. *State, supra,* therefore, it was up to that court to decide which version of Pratt's testimony should be believed. Applying *Franks* v. *Delaware* to this situation, we think the appellant has failed to establish by a preponderance of the evidence that the affidavit contained a false statement knowingly and intentionally made or made with reckless disregard for the truth.

Appellant also says the affidavit signed by Pratt was prepared for the signature of Pratt's accomplice in the theft of the stolen property. There were actually two affidavits prepared — one for each man to sign — and the warrant was prepared to be based upon the affidavits of both of them. Judge Peel testified, however, that he removed the other name from the warrant and that it was based solely on the affidavit signed by Pratt. The United States Supreme Court has said that affidavits for search warrants must be tested in a commonsense and realistic fashion. *United States* v. *Ventresca,* 380 U.S. 102 (1965). We find no error in the issuance of the warrant based upon the affidavit signed by Pratt.

The second point urged for reversal is that the trial court erred in refusing to dismiss the information because the defendant was not brought to trial within 18 months as

required by A.R.Cr.P. Rule 28.1 (c), Ark. Stat. Ann. Vol. 4A (Supp. 1983). The information charging appellant was filed on February 6, 1981, but appellant was not arrested until February 9, 1981, and under A.R.Cr.P. Rule 28.2 (a), the 18 months started running on the day the charge was filed. He was tried on October 26, 1982, so the time from the date he was charged to date of trial is less than 21 months. Under A.R.Cr.P. Rule 28.3 certain periods are excluded in computing the time for trial. Thus, if as much as 3 months was excludable, appellant was brought to trial within the 18-month period.

The state has the burden of proving good cause for any delay in the trial or that the delay was legally justified. *Williams* v. *State*, 275 Ark. 8, 627 S.W.2d 4 (1982). Several reasons are argued by the state to show good cause for the delay in this case, but we need consider only one of them.

From the record the trial court could have found that the appellant, who was on bond, disappeared prior to November 25, 1981. His case was set for trial on November 16, 1981, and his attorney testified that he wrote appellant on October 28, 1981, advising him of the trial date, but appellant did not respond to the letter. Approximately two days before trial date, the attorney was advised by appellant's wife that she did not know where the appellant was. The case was then passed to November 25, 1981. On that date the appellant did not appear and his attorney informed the court that he could not be located. The suppression hearing was held that day and the trial was passed. In February of 1982, appellant's bond was forfeited. Eventually, it was learned that appellant was in the State of Washington and extradition documents were executed in July of 1982. The deputy prosecuting attorney testified that appellant fought extradition and was finally brought back to Arkansas on September 28, 1982.

The period of delay resulting from the absence of a defendant is excludable under A.R.Cr.P. Rule 28.3 (e). *See also, Williams* v. *State, supra;* and *Faulk* v. *State,* 261 Ark. 543, 551 S.W.2d 194 (1977), *appeal dismissed,* 434 U.S. 804 (1977). From November 25, 1981, to September 28, 1982, is

over 10 months. Clearly, the trial which was held within 21 months of the date on which he was charged, was held within the required 18 months when appellant's 10-month absence is excluded.

As his final argument for reversal, appellant contends that the trial court erred in failing to direct a verdict in his favor with reference to a stereo and two speakers and some bedroom furniture. A directed verdict is proper only when no fact issue exists, and on appeal we view the evidence in the light most favorable to the appellee and affirm if there is substantial evidence to support the jury's verdict. *Harris* v. *State*, 262 Ark. 680, 561 S.W.2d 69 (1978); *Balentine* v. *State*, 259 Ark. 590, 535 S.W.2d 221 (1976).

The possession of recently stolen property, if not satisfactorily explained to the jury, is sufficient to sustain a conviction of theft by receiving. *Patterson* v. *State*, 253 Ark. 393, 486 S.W.2d 19 (1972); *Riley* v. *State*, 267 Ark. 916, 593 S.W.2d 45 (Ark. App. 1979). There was testimony from the admitted burglars that among the things they had stolen and taken to appellant were a stereo and two speakers, and that he had given them marijuana in exchange for some of the merchandise they took him. A man from whom a stereo and two speakers had been stolen testified that the items found at appellant's house looked like the ones stolen from him. From these circumstances, the jury could have found that the appellant had good reason to believe that the stereo and speakers were stolen. *Fioranelli* v. *State*, 270 Ark. 470, 605 S.W.2d 13 (1980).

Appellant says he received the bedroom furniture from a couple in exchange for a car he had for sale and asserts he had no reason to suspect it was stolen. He also questions its identification. The bedroom furniture consisted of a vanity-type dresser with stool, cedar chest, and a chest of drawers. It was antique with a distinctive pattern. Officer Taylor testified that he had seen the matching headboard when the rest of the set was first reported stolen and he recognized the same pattern on the furniture in appellant's home. He also testified that he was somewhat of an antique buff and had never seen the same pattern in any antique store. A witness

identified the furniture from photographs taken by the police as being identical to certain furniture stolen from his deceased aunt's home shortly after her death. He was the administrator of her estate and was familiar with the furniture. We think the identification of this furniture was adequate to establish that it had been stolen from the home of the witness's aunt. The appellant's possession was circumstantial evidence but that does not render it insubstantial as the law makes no distinction between direct evidence of a fact and circumstances from which a fact may be inferred, *Cooper* v. *State*, 275 Ark. 207, 628 S.W.2d 324 (1982), and the jury was not required to believe the appellant's explanation that he traded a car for the furniture.

The stereo, speakers, and furniture were only a portion of the items which appellant was charged with receiving in violation of the law. Only one information was filed as to all the items. We find the case was properly submitted to the jury on all the items set out in the information and that there is substantial evidence to support the jury's verdict.

Affirmed.

COOPER and GLAZE, JJ., agree.