Mary REED *v.* STATE of Arkansas

CA CR 04–1224                    209 S.W.3d 449

Court of Appeals of Arkansas
Opinion delivered June 8, 2005

*William R. Simpson, Jr.,* Public Defender, by: *Clint Miller,* Deputy Public Defender, for appellant.

*Mike Beebe,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. This case comes to us from the Pulaski County Circuit Court, Sixth Division. Appellant, Mary Reed, appeals her conviction for intimidating a witness, a violation of Ark. Code Ann. § 5-53-109 (Repl. 1997). On appeal, appellant argues that the trial court erred in denying her motion for dismissal because there was insufficient evidence to prove that, when she threatened Yolanda Peoples on August 15, 2003, she believed Peoples would be called as a witness in the future. We affirm.

The facts are these. On October 3, 2003, the State filed a two-count felony information, charging appellant with first-degree terroristic threatening and intimidating a witness. Appellant stood trial on March 8, 2004. The testimony revealed that appellant and Yolanda Peoples were acquaintances who had lived near each other for a number of years. In April 2003, Peoples witnessed appellant's son, Richard Reed, commit murder. Peoples told appellant and her family what she saw; they told her to keep it to herself. Nevertheless, Peoples's family advised her to contact the authorities; therefore, she made an anonymous statement to the police that she saw appellant's son commit the murder. In May 2003, Peoples identified herself to the police but believed that her identity would be kept confidential until such time as "we got ready to go to court or near trial." Based on Peoples's statement, an affidavit was thereafter prepared to obtain an arrest warrant for Richard Reed. Richard Reed was subsequently arrested; he pleaded guilty to first-degree murder and received forty years' imprisonment.

Following Richard Reed's arrest, his family obtained a copy of the affidavit, which identified Peoples as the person having provided information to the police. Appellant and her family confronted Peoples with a copy of the affidavit, and Peoples admitted to them that she made a statement to the police. Appellant asked Peoples, "How the hell could [you] do that, because the whole time [you've] been sitting over [here] with [us] . . . [you've been] getting information, . . . and going back and telling the police[?]"

Following this confrontation, two additional incidents occurred between appellant and Peoples. First, Peoples was sitting on the porch at the home of appellant's mother, Emma Underwood, talking to Ms. Underwood, when appellant saw Peoples at Underwood's home and asked her mother, "How can you have this fat bitch sitting over there? She tried to send your grandson to jail[.]" Later, on August 15, Peoples was across the street at the home of her children's grandfather, James McDowell. Peoples testified that she was in the McDowell home speaking with Patricia Small and Latosha McDowell, when appellant came into the home and sat down. Peoples testified that:

> And then all the sudden, [appellant] just — she just hollered out, you know, "Mother — ME," saying they saw somebody killed someone, they know they didn't see anything. And I looked at Patricia, Patricia looked at me. We didn't say nothing, just kept on talking.

> And she started — just continued to making comments, and I finally got tired. And I told her, I said, "Mary, look," I said, "you knew from day one what I told you," I said, "because I came and I told you and I came and I told your momma and your sister and your husband what happened." I said, "You had no problems with it, you know. You were cool with it" — as long as she didn't, you know, at first when she didn't know that I had talked to the police, she was fine with it. But when she found out that I talked to the police, I mean, I had been catching hell ever since from —

> She made threats that day. She told me that she was going to — she was going to kill me, she was going to burn down my house, that I had two boys and a girl, that she could do something bad — she said, *"Remember, you got two boys and a girl that I can do something bad to."*

(Emphasis added.)

After the State rested its case-in-chief, the defense moved for dismissal. The trial court denied the motion. Thereafter, the defense renewed its motion after it rested its case. The court dismissed the charge of first-degree terroristic threatening; however, the court denied the defense's renewed motion to dismiss the charge of intimidating a witness. Subsequently, appellant was found guilty of intimidating a witness and sentenced to ten years' imprisonment, with nine years suspended. This appeal followed.

■ ■ A motion to dismiss, identical to a motion for a directed verdict in a jury trial, is a challenge to the sufficiency of the evidence. *Stewart v. State*, 89 Ark. App. 86, 200 S.W.3d 465 (2004). The evidence is reviewed in the light most favorable to the appellee and the conviction is affirmed if there is substantial evidence to support the verdict. *Id.* Substantial evidence is that which will with reasonable certainty compel a conclusion one way or another without resorting to speculation or conjecture. *Wilson v. State*, 88 Ark. App. 158, 196 S.W.3d 511 (2004). On review, this court must determine whether the fact finder resorted to speculation and conjecture in reaching its verdict. *Stewart v. State, supra.* It is in the province of the fact finder to determine the weight of the evidence and the credibility of witnesses. *Id.*

Under Arkansas Code Annotated section 5-53-109(a)(1-3) (Repl. 1997), a person commits the offense of intimidating a witness if she threatens a witness or a person she believes may be called as a witness with the purpose of (1) influencing the testimony of that person; (2) inducing that person to avoid legal process summoning him to testify; or (3) inducing that person to absent himself from an official proceeding to which he has been legally summoned. A witness is "any person who is holding or plans to hold himself available to give testimony at an official proceeding." Ark. Code Ann. § 5-53-101(a)(7)(B) (Repl. 1997). Threat is defined as "a menace, however communicated, to use physical force against any person; or harm substantially any person with respect to his property, safety, business, calling, career, financial condition, reputation, or personal relationship." Ark. Code Ann. § 5-53-101(a)(6) (Repl. 1997).

■ When viewed in the light most favorable to the State, the evidence supports appellant's conviction. Appellant threatened to kill Peoples, burn her house down, and harm her children. Appellant knew that Peoples could be called as a witness at her son's murder trial because she confronted Peoples with the affidavit, which identified Peoples as a witness to the murder. Thereafter, appellant expressed her anger towards Peoples on several occasions, informing her that, "Remember, you got two boys and a girl that I can do something bad to." The trial court, sitting as the finder of fact, could find such a statement to mean that appellant threatened Peoples, whom she knew would be testifying at her son's murder trial, with the purpose of influencing her testimony

or inducing her to not testify. Therefore, as substantial evidence supports the conviction, we affirm.

Affirmed.

ROBBINS and GLOVER, JJ., agree.