2013 Ark. App. 413

**Jonathan Edward BRAWNER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR–12–917.**

Court of Appeals of Arkansas.

June 19, 2013.

Alexander Law Firm, Jacksonville, by Hubert W. Alexander, for appellant.

Dustin McDaniel, Att'y Gen., by Christian Harris, Ass't Att'y Gen., for appellee.

KENNETH S. HIXSON, Judge.

Appellant Jonathan Brawner brings this appeal from a conviction of stalking and for a violation of a protective order. The charges in this case stem from a series of text messages received by appellant's former wife, Renea.

The parties were married in 2003 and had two daughters, R.B., born in 2005, whom appellant nicknamed "Boo" or

"Rea," and G.B. Renea filed for divorce while appellant was serving a prison sentence. While the divorce was pending, Renea received many text messages from appellant. After Renea filed for divorce, she received the following text messages: On July 20, 2010, a text message from (xxx) xxx–4635[1] that stated, "I know where u r all the time if u wont contact me I will contact u." There were two text messages sent from (xxx) xxx–9091. One text message on July 27, 2010, stated, "U still have time to change your mind. Its not to late but time is running out." The second text message was sent on August 6, 2010, that stated, "U decided which side your on. One more decision. Will we raise the girls together or will I raise them alone?" Renea had previously obtained a protective order against the appellant. On September 8, 2010, the court granted Renea's request to extend the protective order for ten years. On October 23, 2010, Renea received a text message from (xxx) xxx–7910, which stated, "Unless we reconcile. I am going to kill Rea, G.B. and H. Troy is not going to raise my kids. U have 72 hours." Three days later, on October 26, appellant was charged with violating the order of protection. On November 3, the State charged appellant with stalking, contending that he had engaged in a course of conduct that harassed another person and made a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury of his or her immediate family.

The matters were tried to the court. After the State rested, appellant moved for a directed verdict, contending that insufficient evidence existed to connect the appellant to the telephone numbers from which the text messages originated. The court found that even though there was no direct evidence, strong circumstantial evidence existed that would prove beyond a reasonable doubt that appellant sent the text messages and that no other reasonable conclusion existed. Appellant brings this appeal.

## I. *Sufficiency of the Evidence*

For his first point on appeal, the appellant challenges the sufficiency of the evidence used to convict him of sending the October 23 text message that led to the charges of stalking and for violating the order of protection. Although appellant moved for a directed verdict, the motion was actually a motion to dismiss because it was a bench trial, not a jury trial. Ark. R.Crim. P. 33.1(b); *Turner v. State,* 2010 Ark. App. 214, at 3, 2010 WL 724307. A motion to dismiss, identical to a motion for a directed verdict in a jury trial, is a challenge to the sufficiency of the evidence. *Reed v. State,* 91 Ark.App. 267, 209 S.W.3d 449 (2005). On appeal, evidence is viewed in the light most favorable to the State, and the conviction is affirmed if there is substantial evidence to support the verdict. *Id.* Substantial evidence is evidence that will, with reasonable certainty, compel a conclusion one way or another without resorting to speculation or conjecture. *Id.* It is within the province of the finder of fact to determine the weight of the evidence and the credibility of the witnesses. *Id.*

Arkansas Code Annotated section 5–71–229 (Repl.2005) provides that the offense of stalking is committed by a person who purposely engages in a course of conduct that harasses another person and makes a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury or placing that person in imminent fear of the death or serious bodily injury of his or her immediate fami-

---

1. The telephone numbers used in the opinion will recite only the last four digits.

ly and the person does so in contravention of an order of protection consistent with The Domestic Abuse Act of 1991. "Course of conduct" has been defined as a pattern of conduct composed of two or more acts separated by at least thirty-six hours, but occurring within one year. Ark.Code Ann. § 5–71–229(d)(1)(A); *Moses v. State,* 72 Ark.App. 357, 39 S.W.3d 459 (2001).

Arkansas Code Annotated section 5–53–134 (Repl.2005) provides:

(a)(1) A person commits the offense of a violation of an order of protection if:

(A) A circuit court or other court with competent jurisdiction has issued a temporary order of protection or an order of protection against the person pursuant to the Domestic Abuse Act of 1991, § 9–15–101 et seq.;

(B) The person has received actual notice or notice pursuant to the Arkansas Rules of Civil Procedure of a temporary order of protection or an order of protection pursuant to the The Domestic Abuse Act of 1991, § 9–15–101 et seq.; and

(C) The person knowingly violates a condition of an order of protection issued pursuant to. the The Domestic Abuse Act of 1991, § 9–15–101 et seq.

Substantial evidence was presented that appellant sent the text messages to Renea. The content and the timing of the messages connected them to the appellant. During the bench trial, Renea testified that appellant frequently refers to his daughter R.B. by the nickname of "Rea." Renea stated that she asked appellant not to contact her and requested that all communication go through her attorney. However, she testified that appellant contacted her close to one hundred times. She stated, "He would text constantly." Most of the calls or texts would originate from an 870 area-code number, which appellant's father testified was the same number of the phone that he had purchased for him. However, Renea also testified that during their marriage, appellant would carry multiple phones, each with a different number, so that his calls could not be traced.

Renea also testified that appellant was a jealous person and was particularly jealous of a man named Troy, who was a single father and had a son close in age to appellant's oldest daughter. She stated that the children would play together.

Renea also testified that one of the messages she received, the one that stated, "You still have time to change your mind. It's not too late, but time is running out," was within minutes after the appellant was served with the extended order of protection.

She also stated that while appellant was in prison, he would tell her that he was "going to get" everyone that was against him. She said that statement made her believe that appellant sent the text message that asked her which side she was on and asking if they would raise the children together or would he raise them alone. She testified that the message made her believe that if she did not reconcile with him and raise their children together, he would have killed her.

The last message that was sent stated that unless she "reconciled" with him, he would kill Rea, G.B. and H. She said that she had not divorced anyone other than him recently, that there was no one else with whom she could "reconcile," and that the message used the nickname for their daughter that was frequently used by appellant. She stated that she was scared to death of appellant, that she believed he was capable of following through with threats, and that there was no doubt in her mind that he sent the text messages. She also stated that after his arrest, she has

not received any other threatening text messages. She stated that the contexts of the texts were directly related to the conversations that she had with appellant in prison.

Tammaula Lee, appellant's probation officer, testified that she served appellant the extended order of protection and that seven minutes after he signed into her office to receive the order, Renea received the test message stating, "You decided which side you're on. One more decision: Will you raise the girls together or will I raise them alone?"

The court found that while there was no direct evidence that appellant sent the threatening text messages, there was very strong circumstantial evidence that it believed beyond a reasonable doubt pointed to appellant as the person who sent the messages. The court also stated that no other reasonable conclusion existed based on the context of the messages.

For circumstantial evidence to be relied on, it must exclude every other reasonable hypothesis other than the guilt of the accused, or it does not amount to substantial evidence. *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 101 (2005). The question of whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the factfinder to decide. *Id.* On review, this court must determine whether the fact-finder resorted to speculation and conjecture in reaching the verdict. *Id.*

In the case at bar, testimony was presented that appellant would send Renea text messages even though she had requested that he communicate with her through her attorney. In the text messages, their daughter was referred to by a nickname used by appellant. The messages also contained references to reconciliation. One text message was sent immediately after he was served the order of protection. The messages would also refer to people in Renea's life of whom the appellant was jealous. We hold that there was substantial evidence from which the circuit court could conclude that the appellant sent the text messages.

## II. *Registration as a Sex Offender*

For his second point on appeal, the appellant contends that the court erred in requiring him to register as a sex offender. He contends that the court did not comment on the issue at the sentencing hearing and that under the statute, for him to be forced to register as a sex offender, he must be convicted of a "sex offense, aggravated sex offense, or sexually violent offense." He argues that neither the content of the text message nor the act of sending the text message can be considered a sex crime.

Arkansas Code Annotated section 12–12–905, which outlines who must register as a sex offender, states that the registration applies to a person who "[i]s adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense." Arkansas Code Annotated section 12–12–903(12)(A)(i)*(n)* (Repl.2009) defines a sex offense as including but not limited to stalking when ordered by the sentencing court to register as a sex offender.

When determining whether the court erred in construing the statute, we review the case de novo. *Wickham v. State*, 2009 Ark. 357, 324 S.W.3d 344. Although the decision of the circuit court is not binding on this court, we will accept its interpretation of the law unless there is a showing that the interpretation was in error. *Fountain v. State*, 103 Ark.App. 15, 285 S.W.3d 706 (2008). Applying the statute to the facts in this case and applying our standard of review, the circuit court

specifically found the appellant guilty of stalking and ordered him to register as a sex offender. The circuit court did not err.

### III. *The Sentence*

For his third point, appellant contends that the court erred in sentencing him by not giving him jail credit time of 485 days and by imposing his misdemeanor sentence for violation of the order of protection to run consecutively, rather than concurrently, with his felony conviction of stalking. His first argument regarding his sentence is moot. An amended sentencing order was filed with the clerk's office showing that he was given jail credit time of 485 days, rather than 114 days as shown on his original sentencing order. However, he also contends that the court erred by ordering his misdemeanor conviction and his felony sentence to run consecutively rather than concurrently.

Arkansas Code Annotated section 5-4-403(c)(1) (Repl.2006) states that "[a] sentence of imprisonment for a misdemeanor and a sentence of imprisonment for a felony shall run concurrently, and both sentences are satisfied by service of sentence for a felony." According to the statute, the sentences should run concurrently. The State concedes this point on appeal. Therefore, this court modifies the sentences to run concurrently. *See, e.g., Moore v. State,* 330 Ark. 514, 954 S.W.2d 932 (1997).

### IV. *Rule 404(b) Evidence*

Appellant asserts that Renea was improperly allowed to testify that he was a very jealous person, that he tried to distance her from family and friends, that he killed a high-school friend, that he planned a kidnapping and a murder, that he had been part of a drug deal, and that he had buried a dead body. He states that these acts occurred long before the alleged acts in this case took place. He contends that because the State did not have any evidence directly linking him to the text message that was sent from a number not traced to him, it resorted to a character assassination to prove its case, which is what Rule 404(b) prohibits. He contends that it was not harmless error to allow the evidence in because, without it, no evidence exists that he would ever try to harm his ex-wife and children.

Arkansas Rule of Evidence 404 provides:

(a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

For evidence to be admissible under this rule, it must have independent relevance. *See Morris v. State,* 367 Ark. 406, 240 S.W.3d 593 (2006).

The admission or rejection of evidence under this rule is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Tate v. State,* 367 Ark. 576, 242 S.W.3d 254 (2006). The list of exceptions set out in the rule is exemplary and not exhaustive. *Id.* Testimony is admissible pursuant to Rule 404(b) if it is independently relevant to the main issue, relevant

in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal or a bad person. *Id.*

In *Tate,* appellant was convicted of first-degree murder. Evidence was admitted that prior to the killing, the appellant had approached a witness, asked if she was scared of him and then discharged a gun, which was determined to be the murder weapon, in a couch near her foot. He objected to her testimony. The court allowed it and he appealed. Our supreme court held the evidence that Tate intentionally fired the gun to be relevant to show his intent to commit murder. *Tate,* 367 Ark. at 580, 242 S.W.3d at 259.

As we have said in *Morris, supra,* any circumstance that ties a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible. In the case at bar, evidence of the crimes showed that appellant's ex-wife had a rational, legitimate fear of her ex-husband. The crime of stalking contains elements of harassing another person and making a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury or placing that person in imminent fear of death or serious bodily injury of his or her immediate family and the person. The testimony concerning his bad acts were admissible to show his motive, intent, and plan for carrying out the threats made against his ex-wife.

We find this evidence of his prior bad acts to be independently relevant to show that appellant's ex-wife had a legitimate, imminent fear for herself and her family of death or serious bodily injury. Her testimony that appellant had conveyed to her that he had planned a kidnapping, had murdered his best friend in high school, and had buried a body shows that she would be in imminent fear after receiv-

ing the texts. That testimony concerning his character showed that his ex-wife had a legitimate fear after receiving the threatening text messages. Here the evidence was not used to prove his character and that he acted in conformity therewith, but rather to show that Renea was fearful of him, and that he had a motive and intent for threatening her and, further, that he would carry out the threats.

Affirmed as modified.

HARRISON and BROWN, JJ., agree.