

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–13–292

| | | |
|---|---|---|
| | | Opinion Delivered October 23, 2013 |
| BOBBY RAY MOORE | | |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR–2012-115-1] |
| V. | | |
| | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Bobby Ray Moore appeals the September 11, 2012 conviction and sentencing order in the Hot Spring County Circuit Court, wherein he was convicted of possession of firearms by certain persons and sentenced to ten years' imprisonment. On appeal Moore argues that the evidence was insufficient for a conviction. We affirm, holding that the circumstantial evidence amounts to substantial evidence supporting the verdict.

Moore was charged with being a felon in possession of a firearm and being a habitual criminal by amended information filed on September 4, 2012. At the jury trial on September 6, 2012, Regina Shearin, 911 dispatcher for Hot Spring County, testified that she received a call on March 30, 2012, and the audio recording of that 911 call was played for the jury. The recording reflected that David Avington saw a man get out of a car, chase another man, and shoot into the air. Avington reported that the shooter was driving "a blue, no a silver car," which he identified later in the 911 call as a silver Taurus.

Avington testified that he had been mowing his yard at 810 Acme Street when he heard a shot. He called 911 because his grandchildren were with him in the yard. He testified that he saw a car stop on the railroad track. He saw a passenger get out and then saw the driver get out, walk about twenty feet, then go back to his car. Avington said, "He got out and he boom, boom, boom." Avington described the shooter as a black man wearing jeans but no shirt. He said that the car was a silver Taurus, but he was not able to recognize the shooter. Avington testified that, after the shooter got back in his car, he drove away toward Oak Street. The car then turned around, came back across the track, and turned on Burris Street, right behind Avington's trailer.

Lieutenant Brian Heinley with the Malvern police testified that he was dispatched to the scene and spoke to David Avington. When Avington gave him the description of the shooter, Heinley broadcast the information to other officers. As he was speaking to Avington, Officer Coke advised over the radio that he had the suspect vehicle stopped on Burris Road.

Heinley identified Moore as the driver of the stopped vehicle and said that Moore was taken into custody. Heinley estimated that it was three or four minutes between the original 911 call and the time that Moore was stopped. Heinley described the procedure for securing Moore's car and stated that he went to the jail, where Moore had been taken, and advised Moore that a gunshot-residue (GSR) test would be administered on his hands. At that point, Moore became very aggressive and combative toward the officers. Heinley said that they had to physically restrain Moore but that the test was administered.

SLIP OPINION

Heinley opined that there would have been sufficient time for Moore to get rid of the gun before his arrest. He stated that Moore could have thrown it out the window or dropped it off at a residence as he was passing in his car. Heinley testified that Moore did not become physically aggressive until he was told that a GSR test would be administered.

Corporal Clay Coke with the Malvern police testified that he stopped Moore's car on Burris Street. Moore, who matched the description that came from dispatch, exited the vehicle and said, "I ain't got no gun." Coke said that Moore was aggressive and was cursing the officers. Coke searched Moore's vehicle, but found no firearm. When they arrived at the jail, Coke handcuffed Moore to a bench. Coke maintained that, all the while, Moore's aggression was rising. When told that a GSR test would be administered, Moore became more aggressive, saying he was not doing the test. Coke said that Moore was wiping his hands on his pants, balling his fists up, and curling his arms in so that the officers had to handcuff his other arm. Coke said it took four officers to get the test swab.

Malvern police officer Adam Taylor said that he arrived on the scene after Moore had been stopped and found a nine-millimeter Luger shell casing on the road. He testified that when he arrived at the jail, Moore was handcuffed to a bench and was doing something with his hands. He saw that Moore had a substance on his hands that could have been soap, toothpaste, or hand sanitizer, and that he was rubbing between all his fingers, up to about four-or-five inches above the wrist, with the substance. Taylor described a door with a bean-hole port next to the bench where Moore had been handcuffed. The bean-hole port was open and there was another inmate in this cell who had supplied Moore with whatever

he had on his hands. Taylor later testified that he did not witness the inmate give anything to Moore. He described Moore as being combative when confronted with the GSR test and said that Moore had to be restrained by four officers.

Allison Talbot, a criminalist at the Arkansas State Crime Lab, testified that a GSR test must have at least one particle containing antimony, lead, and barium to be positive. In the instant test, however, she found one particle containing barium and lead, but none with all three. Therefore, she testified that the test for GSR was negative. She explained that a negative test result cannot support the conclusion that a person did not discharge a firearm because there are many reasons for a GSR kit to be negative, including washing hands and wiping hands repeatedly on pant legs.

After a stipulation that Moore had a prior violent-felony conviction, Moore moved for a directed verdict, arguing that the evidence was insufficient for the jury to determine that he had a gun or had fired a gun. The motion was denied. At the close of the defense's case, the motion was renewed and denied again. The jury found Moore guilty of possession of a firearm, and he was sentenced to ten years' imprisonment in the Arkansas Department of Correction. It is from this conviction that Moore appeals.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Magness v. State*, 2012 Ark. App. 609, ___ S.W.3d ___. We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or

conjecture. *Id.* Furthermore, this court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* Circumstantial evidence may constitute substantial evidence to support a defendant's conviction, but only if it excludes every reasonable hypothesis other than the guilt of the accused. *Inthisone v. State*, 2013 Ark. App. 482. The question of whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is generally reserved for the fact-finder. *Id.* On review, this court must determine whether the fact-finder resorted to speculation and conjecture in reaching the verdict. *Brawner v. State*, 2013 Ark. App. 413, ___ S.W.3d ___.

Arkansas Code Annotated section 5-73-103 (Supp. 2011) provides that no person who has been convicted of a felony shall possess or own any firearm, subject to exceptions not applicable in this case. A Class B felony is committed by a person possessing a firearm if (1) the person has a prior violent-felony conviction; (2) the person's current possession of a firearm involves the commission of another crime; or (3) the person has been previously convicted under the statute. Ark. Code Ann. § 5-73-103(c)(1)(A)–(C).

Moore claims that the trial court erred in denying his motion for directed verdict, arguing that the jury would have to resort to speculation and conjecture to find him guilty of possession of a firearm by certain persons. *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993) (where circumstantial evidence did not amount to substantial evidence that victim's liberty was restrained to support a kidnapping charge). He points to Avington's prevarication in identifying the vehicle, emphasizing that in his 911 call, Avington first claimed that the

5

vehicle was blue, then silver, then later in a police statement, he identified the vehicle as being gray. Moore notes that Avington could not identify him as the shooter, even though Avington knew him personally. Moore argues that no one identified him as the shooter, that the GSR test was negative, that neither a gun nor shell casings were found in the car, and that there were no blood or fingerprints on the shell casing found at the scene. He acknowledges that guilt can be established by circumstantial evidence, but notes that it must exclude every other reasonable hypothesis than that of guilt of the accused or it does not rise to the required substantial evidence. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000).

The State maintains that substantial evidence supports Moore's conviction. It cites *Wilson v. State*, 10 Ark. App. 176, 662 S.W.2d 204 (1983), where this court held that possession of stolen goods, even though circumstantial, was sufficient to sustain a conviction of theft by receiving. We reasoned that the law makes no distinction between direct evidence of a fact and circumstances from which a fact may be inferred. *Id.* at 185, 662 S.W.2d at 209 (citing *Cooper v. State*, 275 Ark. 207, 628 S.W.2d 324 (1982)). The State also notes that Moore's actions, when confronted with the GSR test, are indicative of his guilt, citing *Riddle v. State*, 303 Ark. 42, 791 S.W.2d 708 (1990) (where appellant's flight to avoid capture was incriminating evidence).

We agree with the State that the evidence, viewed in the light most favorable to the prosecution, is sufficient to support the verdict. Moore was stopped within close proximity to where Avington reported that shots had been fired. He was driving a silver Taurus and wearing jeans with no shirt. The description of Moore and of his vehicle matched the

description reported by Avington. When confronted with the prospect of being tested for gunshot residue, Moore exhibited aggressive behavior and was observed wiping his hands. A criminalist testified that wiping and washing hands could interfere with the GSR test. Officer Heinley testified that there was sufficient time for Moore to dispose of a gun before his arrest. Accordingly, we affirm and hold that the circumstantial evidence excludes every other reasonable hypothesis than that of guilt. *Inthisone, supra*; *Gregory, supra.*

Affirmed.

PITTMAN and WOOD, JJ., agree.

*Gregory Crain*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rebecca B. Kane*, Ass't Att'y Gen., for appellee.